171 F.Supp.2d 985 (2001)
Johnnie JOHNSON, Plaintiff,
v.
Charles E. BERRY and Isalee Music Company, Defendants.
No. 4:00CV1891-DJS.
United States District Court, E.D. Missouri, Eastern Division.
June 11, 2001.
*986 Mitchell A. Margo, Curtis and Oetting, St. Louis, MO, Scott J. Orr, Orr Law Firm, Sacramento, CA, for plaintiff.
Martin M. Green, Joe D. Jacobson, Fernando Bermudez, Green and Schaaf, St. Louis, MO, for defendants.

ORDER
STOHR, District Judge.
Defendant Charles E. Berry is the famed singer and guitarist popularly known as Chuck Berry. In 1953, plaintiff Johnnie Johnson, a pianist, invited Berry to join his musical group, which was later renamed the Chuck Berry Trio. Defendant Isalee Music Company is alleged to be a publishing company wholly owned by Berry. Johnson brings the instant action alleging that he is owed an accounting and compensation for some 50 songs first performed and recorded by the parties' band *987 between 1955 and 1966. The seven-count complaint asserts a right to various species of relief under theories including copyright infringement, breach of fiduciary duty and fraud. Now before the Court is defendants' motion to dismiss urging various arguments for the dismissal of each of plaintiff's claims as a matter of law. Defendants have also filed a motion for reconsideration of the Court's order of May 30, 2001, requiring defendants to produce to plaintiff copies of all documents identified in their Rule 26 disclosure.

MOTION TO DISMISS

Count I  Copyright Infringement  "Wee Wee Hours"
Count I of the complaint asserts a claim of copyright infringement against both defendants as to the song "Wee Wee Hours," alleging that the song resulted from a May 1955 recording session in which Berry wrote words to a previously untitled instrumental blues song that Johnson had created in the late 1940's. In their motion to dismiss, defendants contend that the claim is not legally viable because there can be no infringement by a co-author under the Copyright Act.[1] The parties do not disagree on this legal principle, which appears to be well-established.
"A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." Oddo v. Ries, 743 F.2d 630, 632-33 (9th Cir.1984). Because a co-owner is an owner, he has a right to use or license the use of the copyright, and cannot be an infringer: his duty to account to other co-owners for profits arises from equitable doctrines relating unjust enrichment and general principles of co-ownership, and does not amount to an infringement claim. Id. at 633. An infringement claim can be brought only against one who violates "the exclusive rights of the copyright owner," see 17 U.S.C. § 501(a), (b), and an owner does not have rights exclusive of a co-owner's, so an infringement claim cannot lie against a co-owner.
Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir.1996). Plaintiff argues, however, that this principle does not apply to defeat Count I because Count I does not allege co-ownership of the copyright in question.
Co-ownership is a legal concept, however, not merely a factual assertion, and the Court must therefore examine the factual allegations of the complaint to determine whether they, if true, inherently yield the conclusion of joint ownership.
The Copyright Act defines a "joint work" as a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole. 17 U.S.C. § 101 (1988 & Supp.1993). The parts of a work are "interdependent" when they have some meaning standing alone but achieve their primary significance because of their combined effect, as in the case of the words and music of a song... The requisite intent to create a joint work exists when the putative joint authors intend to regard themselves as joint authors ... It is not enough that they intend to merge their contributions into one unitary work.
Papa's-June Music, Inc. v. McLean, 921 F.Supp. 1154, 1157 (S.D.N.Y.1996), citing Childress v. Taylor, 945 F.2d 500, 505 (2d. Cir.1991). Plaintiff correctly points out that the complaint does not expressly allege that Johnson and Berry "collaborated" on "Wee Wee Hours," the song that is the subject of Count I.
*988 In this respect, the complaint's allegations are different concerning the catalogue of 50-plus songs specifically named and categorically designated as the "Berry/Johnson Songs." The complaint explicitly alleges that "Mr. Johnson and Mr. Berry together created" and "in collaboration, created" these songs. Complaint, ¶ 8; see also Complaint, ¶ 9 ("Mr. Johnson collaborated with Mr. Berry to write the music for the Berry/Johnson songs."). Plaintiff acknowledges that, based on these allegations, Berry cannot be liable to him for copyright infringement, and so concedes defendants' motion as to Count IV, which asserts a claim of copyright infringement as to all the Berry/Johnson songs.
What is alleged concerning "Wee Wee Hours" is that in a 1955 recording session, plaintiff suggested that the parties' band record a previously untitled instrumental song plaintiff had composed in the 1940's, and that the recording was made, with defendant Berry singing lyrics he added at that time. That Johnson participated voluntarily in the recording, including the addition of the new lyrics created by Berry, can be inferred from these allegations. In opposition to the motion, plaintiff does not argue the legal implications of the pled facts and does not assert additional facts; he stands instead on the assertion that the complaint "contains no allegation that there was an agreement between Mr. Johnson and Mr. Berry to collaborate on this song." Pltf. Response in Opp., p. 4.
Intentional collaboration is inherent in the facts which plaintiff has pled. The song was allegedly created in a recording session in which Johnson and Berry both willingly participated in the marriage of Johnson's pre-existing tune with Berry's newly-created lyrics. These facts demonstrate an intention that their respective contributions be merged into interdependent parts of a unitary whole, as described in Childress, 945 F.2d at 505, in which the Second Circuit cites the combination of words and music to create a song as a paradigm example of joint authorship. Because the joint authorship necessarily implied by the facts pled in Count I would, in the absence of any transfers of interest, yield co-ownership of the copyright, Count I is susceptible to the same defect as plaintiff has acknowledged as to Count IV, namely that there can be no infringement by a co-owner of the copyright. Defendants' motion will be granted as to Count I.[2]

Count II  Declaratory Judgment of Co-Ownership in Copyrights
Count II seeks a declaratory judgment against both defendants that Johnson was a partner in the creation of, and is therefore a co-owner of the copyrights to, the Berry/Johnson songs, and that Johnson has an interest in the renewal copyrights. Defendants contend that this claim is time-barred, citing the three-year statute of limitations found in the Copyright Act, 17 U.S.C. § 507(b). In response, Johnson cites two theories for tolling the statute of limitations, facts supporting which are pled in his complaint. The first is in the nature of fraudulent concealment by Berry, based on Johnson's allegations that Berry "repeatedly led Mr. Johnson to believe that he was not entitled to compensation for the Berry/Johnson Songs over and above the fee he received as a musician during the various recording sessions." Complaint, ¶ 10. The second theory is that of plaintiff's incapacity due to alcoholism:
Mr. Johnson experienced the onset of alcoholism in the late 1940's. For decades *989 thereafter Mr. Johnson suffered the physical, emotional and mental symptoms and consequences of this disease which rendered him unable to comprehend the magnitude of his musical contributions or the ownership rights to the music that he created with Mr. Berry.
Complaint, ¶ 11.
The cases cited by the parties yield the following legal principles pertinent to the Court's determination. First, in 1996 the Ninth Circuit observed: "There is a surprising lack of precedent on the question of when a cause of action claiming co-ownership of a copyright accrues." Zuill, 80 F.3d at 1370. Nonetheless, "[a] claim for a declaratory judgment of co-ownership and the relief ancillary to such a claim is a civil action, and `[n]o civil action shall be maintained...unless it is commenced within three years after the claim accrued.'" Id. at 1371, quoting 17 U.S.C. § 507(b). In a copyright accrual context, the Second Circuit has held that "[a] cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised." Stone v. Williams, 970 F.2d 1043, 1048 (2nd Cir. 1992); Merchant v. Levy, 92 F.3d 51, 56 (2nd Cir.1996). "A cause of action accrues when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." Netzer v. Continuity Graphic Associates, Inc., 963 F.Supp. 1308, 1315 (S.D.N.Y.1997). Adopting by analogy a principle from tenancy in common in real property, the Zuill court noted that "[a]n express or implicit ouster of a cotenant by an unequivocal act of ownership starts the adverse possession statute of limitations running."
Legislative history quoted in Zuill indicates Congress' intent that "[e]quitable considerations are available to prolong the time for bringing suit in such cases where there exist the disabilities of insanity or infancy, absence of the defendant from the jurisdiction, fraudulent concealment, etc." S.Rep. 85-1014, p.1963 (1957), quoted in Zuill, 80 F.3d at 1369, n. 1. In Merchant, the jury appears to have concluded that the plaintiffs' minority tolled the running of the statute of limitations until they reached the age of majority, and on appeal "duress" was argued to toll the statute of limitations. Merchant, 92 F.3d at 56. The district court in Netzer distinguishes equitable estoppel from equitable tolling in the following manner. "Equitable estoppel may toll a statute of limitations where the plaintiff knew of the existence of his cause of action, but the defendant's misconduct caused him to delay in bringing suit." Netzer, 963 F.Supp. at 1316. Equitable estoppel requires "`egregious wrongdoing' by a defendant [which] prevents a plaintiff from bringing suit on a claim of which the plaintiff is aware." Id. By contrast, equitable tolling stops the running of a statute of limitations "against a plaintiff who was justifiably ignorant of his cause of action." Id.
Either species of tolling requires the plaintiff "to demonstrate this his ignorance is not attributable to a lack of diligence on his part," and "[a] plaintiff who unreasonably relies on the reassurances of a wrongdoer has not satisfied this obligation of due diligence." Id. Furthermore, "equity will impute to a litigant knowledge of facts that would have been revealed by reasonably required further investigation." Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1521 (9th Cir. 1983). "Fraudulent concealment does not lessen a plaintiff's duty of diligence; it merely measures what a reasonably diligent plaintiff would or could have known regarding the claim." Stone v. Williams, 970 F.2d 1043, 1048-49 (2nd Cir.1992). Furthermore, once sufficient facts are known to trigger a duty to inquire, "plaintiff is charged with whatever knowledge an inquiry would have revealed." Id. at 1049. *990 Plaintiff's awareness of the pertinent facts ordinarily starts the statute of limitations, even if he lacks awareness of their legal ramifications: "the legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves." Id.
The appropriate application of these not-uncomplicated principles cannot be determined at this time, on the basis of the pleadings alone. Dismissal is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Hungate v. United States, 626 F.2d 60, 62 (8th Cir.1980). Viewing the facts alleged in the light most favorable to the plaintiff, the Court cannot conclude at this juncture that plaintiff will be unable to prove facts which might warrant a tolling or estoppel with respect to the statute of limitations. Whether plaintiff's alcoholism can constitute a disability tolling the statute of limitations is an issue that requires the development of a more detailed factual record and a more intensive legal analysis than has been attempted by either party on the instant motion. The same is true of plaintiff's claims that defendant Berry misled him concerning his rights to further compensation for the music the two created. Defendants' motion will be denied as to Count II.

Count III  Accounting
On the basis of plaintiff's claim of co-ownership in the copyright to the Berry/Johnson songs, Count III seeks an accounting by both defendants of all profits from the songs from 1955 to the present. Defendants challenge Count III on the same statute of limitations grounds as are asserted against Count II, and for the same reasons as set forth above, the Court will deny the motion to dismiss as to Count III.

Count IV  Copyright Infringement  Berry/Johnson Songs
Count IV contains plaintiff's claim for copyright infringement as to all the Berry/Johnson songs. As previously noted, plaintiff concedes in response to the motion to dismiss that his assertion that he and defendant Berry are co-owners of the copyright precludes a claim of copyright infringement. Plaintiff's memorandum in opposition to the motion to dismiss seeks to dismiss Count IV without prejudice, which the Court will so order.

Count V  Partnership Fiduciary Duty
Count V asserts a claim of breach of partnership fiduciary duty against defendant Berry only. Johnson alleges that he and Berry were partners as defined in Chapter 358 of the Revised Missouri Statutes, and that Berry breached his fiduciary duties to his partner Johnson by working alone and with defendant Isalee to obtain copyrights without Johnson, by depriving Johnson of profits, by misleading Johnson to believe he was not a co-owner of the copyrights, and by taking advantage of Johnson's alcoholism. Defendants seek dismissal of Count V on the basis of the five-year statute of limitations set forth in § 516.120 R.S.Mo. In response, plaintiff again asserts his two arguments for tolling the statute of limitations, and in addition offers a theory that the partnership extended until the filing of the lawsuit. The Court need not and does not address the latter theory, as the tolling arguments are sufficient at this time to defeat dismissal on the statute of limitations basis urged in defendants' motion.[3]

*991 Count VI  Fiduciary Duty under Copyright Law

Count VI of the complaint contains a claim of breach of fiduciary duty against Berry under federal copyright law. Defendants argue that, as a matter of law, co-owners of copyright do not owe one another fiduciary duties. The sole case cited in support of this legal proposition is the district court's summary judgment decision in Margo v. Weiss, 1998 WL 2558 (S.D.N.Y.1998), affirmed by the Second Circuit at 213 F.3d 55 (2nd Cir.2000). Plaintiff points out that in another case, a judge of the same court declined to apply the Margo decision on this point in a motion to dismiss context. See Willsea v. Theis, 1999 WL 595629 (S.D.N.Y.1999). Neither case is strong authority for such a mixed question of fact and law as the existence of a fiduciary duty, and the Court declines to determine the question on the basis of such rival authorities and in the absence of principled legal analysis, which has not been offered by either side. As before, defendants' statute of limitations cannot carry the day at this stage of the proceedings. Dismissal of Count VI will therefore be denied at this time.

Count VII  Fraud
Finally, plaintiff asserts in Count VII that defendant Berry is liable to him for fraud based on numerous material misrepresentations made to lead plaintiff to believe that he was not entitled to any compensation beyond his fee as a studio musician. As to this claim, as those preceding it, the statute of limitations cannot secure dismissal at this time. In addition, defendants argue that plaintiff alleges only misrepresentations of law, and that recovery for fraud requires the defendant to have made misrepresentations of fact. Under Missouri law, "it has been consistently held that an action for fraud cannot be based upon a misrepresentation of law." Uhle v. Sachs Electric, 831 S.W.2d 774, 778 (Mo.App.1992). In Uhle, the representations at issue concerned whether "bid-rigging" was illegal, and so dealt with whether or not a legal proposition was true.
Although the general principle is readily stated, its application can be less straightforward, as revealed by the Missouri Court of Appeals' review of some of the case law in McMullin v. Community Savings Service Corp., 762 S.W.2d 462 (Mo.App.1988). A seller's representation that he owned fee simple title to land is one of fact and actionable as fraud. Nixon v. Franklin, 289 S.W.2d 82, 89 (Mo.1956). A representation that a special warranty deed was a quit-claim deed is a representation of fact, not law. City of Gainesville v. Gilliland, 718 S.W.2d 553, 579 (Mo.App.1986). A seller's representation that homes for sale were subject to a certain indenture agreement was actionable as a misrepresentation of fact. McMullin, 762 S.W.2d at 465.
Representations that plaintiff was not entitled to compensation beyond his studio musician fees and that only Berry was entitled to own the copyrights to the Berry/Johnson Songs bear some relation to the representations concerning title and limitations on ownership at issue in these cases. "Although an application of the law may be necessary before ultimately resolving whether the representation was true or false," the representations may not be mere expressions of opinion as to a matter of law and so may be actionable as fraudulent under Missouri law. The application of Missouri law to the issue is not so simple as defendants assert in their motion to dismiss, and the Court is therefore not persuaded to dismiss Count VII at this time on the basis urged, without a more fully developed factual record and legal analysis.

*992 Conclusion  Motion to Dismiss

For all the foregoing reasons, defendants' motion will be denied as to Counts II, III, V, VI and VII, and Counts I and IV will be dismissed by a partial judgment entered separately herein.

MOTION FOR RECONSIDERATION
By order dated May 30, 2001, the Court granted plaintiff's unopposed motion to compel defendants to produce copies of all the documents defendants listed in their Rule 26 disclosure. Defendants now seek reconsideration of the order, offering counsel's error as the reason for the lack of timely opposition to plaintiff's motion. Even if the Court excuses defendants' untimeliness and considers the substance of their opposition to producing the documents, defendants ask only that the Court defer the production required by its prior order until after its ruling on the motion to dismiss. Because the motion to dismiss is here granted in part and denied in part, the motion for reconsideration will be denied, and defendants are ordered to produce the documents no later than June 25, 2001. The parties are also ordered, however, to confer forthwith in good faith in an effort to stipulate to an appropriate protective order, and shall file their stipulation no later than June 18, 2001.
Accordingly,
IT IS HEREBY ORDERED that defendants' motion to dismiss [Doc. # 5] is granted in part and denied in part.
IT IS FURTHER ORDERED that the parties' joint request for oral argument [Doc. # 12] is denied.
IT IS FURTHER ORDERED that defendants' motion for reconsideration of the Order of May 30, 2001, for leave to file opposition to plaintiff's motion to compel, and for a protective order [Doc. # 29] is denied.
IT IS FURTHER ORDERED that defendants shall produce to plaintiff, no later than June 25, 2001, copies of all documents identified in defendants' Rule 26 disclosures. The parties shall confer forthwith in good faith in an effort to stipulate to an appropriate protective order, and shall file their stipulation no later than June 18, 2001. A courtesy copy of a stipulated protective order shall be submitted directly to the Court's chambers in Room 16.182.
NOTES
[1] In response to the motion, plaintiff offers argument concerning the statute of limitations, but this is not a basis on which defendants seek dismissal of Count I.
[2] The Court does not consider an alternative argument raised by defendants for the first time in their reply brief, that Johnson had waived copyright protection of his tune and it was in the public domain at the time it was recorded with new lyrics in 1955.
[3] In their reply, defendants offer a new argument that plaintiff has failed properly to plead the existence of a partnership. The Court does not consider an argument made for the first time in a reply, to which the opposing party has no opportunity to respond.